IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


RAYMOND BAIR,                                    3:17-CV-00622-BR

        Plaintiff,                               OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

**NANCY J. MESEROW**
7540 SW 51st Ave.
Portland, OR 97219
(503) 560-6788

        Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1011

**MICHAEL W. PILE**
Acting Regional Director
**DIANA ANDSAGER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/A 221A
Seattle, WA 98104
(206) 615-2531

        Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Raymond Bair seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the immediate calculation and award of benefits.


## ADMINISTRATIVE HISTORY

Plaintiff filed applications for DIB on July 10, 2012, alleging a disability onset date of March 5, 2011. Tr. 255.[1] The application was denied initially and on reconsideration. Tr. 109-33. An Administrative Law Judge (ALJ) held a hearing on June 30, 2014. Tr. 69-108. Plaintiff was represented at the hearing. Plaintiff and a vocational expert (VE) testified. The ALJ issued a decision on July 18, 2014, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 138-154. The Appeals Council remanded for a second hearing. Tr. 159-62.

---

[1] Citations to the official transcript of record filed by the Commissioner on June 13, 2017, are referred to as "Tr."

An ALJ held a subsequent hearing on December 16, 2015.
Tr. 40-68. The ALJ issued a decision on January 27, 2016, in
which he again found Plaintiff is not disabled. Tr. 17-32.
Pursuant to 20 C.F.R. § 404.984(d), that decision became the
final decision of the Commissioner on March 8, 2017, when the
Appeals Council denied Plaintiff's request for review. Tr. 1-4.
*See also Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born in 1963 and was 51 years old at the time
of the hearing. Tr. 17, 47. Plaintiff completed high school and
has an Associate's Degree in electrical engineering. Tr. 31, 48.
Plaintiff has past relevant work experience as a research
engineering technician, manufacturing technician, and field-
service engineer. Tr. 30.

Plaintiff alleges disability due to fibromyalgia, migraines,
depression, and grand mal seizures. Tr. 122. Plaintiff took
some time off in March 2011 because of his back pain. Tr. 846.
When he tried to go back to work, the pain got worse. Tr. 528,
603. Plaintiff stopped working due to his back pain, and he
continued to have chronic lower-back pain from that point.
Tr. 19, 489, 519, 847. Brett Stacey, M.D., treating physician,
concluded Plaintiff meets the American College of Rheumatology
criteria for fibromyalgia. Tr. 484.

In addition to his back pain, Plaintiff states he experiences pain in his feet, legs, arms, hands, and shoulders. Tr. 485, 489, 499, 510, 514, 659. Plaintiff reported his pain is constant and persistent and became so severe at one point that he was bedridden for days. Tr. 513, 676, 847, 1322, 1376. Plaintiff also reported difficulties with memory and stated he suffers at times from frequent memory lapses that last as long as an entire day. Tr. 90, 293, 411, 413, 416, 847, 1337. In addition, he reported he suffers from PTSD due to an incident when he was 12 years old in which his stepfather attacked his mother and Plaintiff shot and killed his stepfather. Tr. 489, 848. Plaintiff also suffers from chronic depression. Tr. 476, 484. Dr. Stacey observed Plaintiff "has longstanding depression with prior suicidal attempts and ideation." Tr. 484. Treating psychologist Beth Darnall, Ph.D., concluded Plaintiff is severely depressed and another treating provider determined Plaintiff was at risk for suicide. Tr. 491, 1309. His depression is exacerbated by the stress of his son's terminal brain cancer, which has resulted in his son's blindness. Tr. 492, 569, 848. Plaintiff also suffers from excruciating migraines that have caused him to go to the emergency room on dozens of occasions. Tr. 411, 423, 431, 460, 465, 469, 472, 476, 479, 628, 672, 681, 684, 687, 700, 705, 721, 804, 807, 810, 812, 815, 821, 823,

833–34, 868, 871, 963, 1002, 1050, 1230, 1357, 1368.  To provide
relief from the migraines Plaintiff generally has to be treated
with a cocktail of intravenous drugs.  Tr. 460, 628, 672, 823.
At multiple appointments, treating physician Michelle Mears,
M.D., observed Plaintiff lying on the floor in the fetal position
due to migraine pain.  Tr. 628, 632.  Despite trying a wide
variety of treatment options, Plaintiff's migraines have
persisted.  *See, e.g.*, Tr. 25, 1357, 1368, 1370.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th
Cir. 2012).  To meet this burden, a claimant must demonstrate his
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which . . . has lasted or can be expected to last for
a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The ALJ must develop the record when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d
881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d
453, 459–60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec.
Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial
evidence is "relevant evidence that a reasonable mind might
accept as adequate to support a conclusion." *Molina*, 674 F.3d.
at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574
F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere
scintilla [of evidence] but less than a preponderance." *Id.*
(citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.
2009). The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision. *Ryan v.
Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even
when the evidence is susceptible to more than one rational
interpretation, the court must uphold the Commissioner's findings
if they are supported by inferences reasonably drawn from the
record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).
The court may not substitute its judgment for that of the
Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520 (2016). Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The

claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in 20 C.F.R. part 404, subpart P, appendix 2. If the

Commissioner meets this burden, the claimant is not disabled.  20
C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff had not engaged in
substantial gainful activity since March 5, 2011, the alleged
onset date.  Tr. 19.

At Step Two the ALJ found Plaintiff has the severe
impairments of migraines, myofascial pain syndrome of the back,
and fibromyalgia.  Tr. 19.  The ALJ found Plaintiff's depression,
diabetes mellitus, hypertension, Vitamin D deficiency, and
hyperlipidemia are nonsevere.  Tr. 20-22.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments during the relevant period did not meet
or medically equal one of the listed impairments in 20 C.F.R.
part 404, subpart P, appendix 1.  Tr. 22.  The ALJ then found
Plaintiff has the RFC to perform light work with the following
limitations:  Plaintiff can sit, stand, and walk about six hours
each in an eight-hour workday; frequently climb ramps and stairs;
never climb ladders, ropes, or scaffolds; occasionally stoop,
kneel, crouch, and crawl; and do no more than simple routine
work.  He also must avoid concentrated exposure to hazards such
as machinery and heights.  Tr. 22.

At Step Four the ALJ found Plaintiff is unable to perform any of his past relevant work.  Tr. 30.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy such as laundry folder, storage-facility rental clerk, and office helper. Tr. 31.  Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 32.


**<u>DISCUSSION</u>**

Plaintiff contends the ALJ erred by (1) improperly discounting Plaintiff's subjective symptom testimony; (2) erroneously rejecting the medical opinions of treating physician Dr. Mears and examining physician Thomas Anderson, M.D.; (3) improperly crediting the opinion of nonexamining physician Neal Berner, M.D., over the opinions of Dr. Mears and Dr. Anderson; (4) erroneously rejecting the lay-witness testimony of Sheryll Bair, Plaintiff's mother; (5) improperly failing to analyze Listing 11.03; and (6) improperly determining Plaintiff's chronic pain syndrome was not a severe impairment.

**I.    The ALJ erred when he discounted Plaintiff's subjective symptom testimony.**

Plaintiff contends the ALJ did not provide clear and convincing reasons for discounting Plaintiff's testimony.

In *Cotton v. Bowen*, the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments and show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (1996).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's testimony only if he provides clear and convincing reasons for doing so.  *Parra*, 481 F.3d at 750 (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient. *Id.* The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

Plaintiff testified at the hearing that his fibromyalgia causes a burning pain primarily in his arms and back.  Tr. 51. He explained the more active he is, the worse his pain becomes. Tr. 52.  Plaintiff testified he cannot stand or sit for very long due to back pain.  Tr. 58.  Plaintiff is unable to help around the house and no longer engages in any of his hobbies.  Tr. 60,

62.  He explained he would be able to perform two hours of
sedentary work per day, but he stated even that amount would be
challenging for him because his pain builds up over time.
Tr. 58.  Plaintiff indicated having a less stressful job would
probably not make a difference because he enjoyed his previous
jobs, but he became unable to perform them due to pain.  Tr. 61.
Plaintiff reported he has headaches 90 percent of the time and
that the headaches become migraines three or four times per
month.  Tr. 54.  After a migraine starts, it can last for days.
Tr. 54.  If he does not take his anti-nausea pills fast enough,
he cannot keep his pain medications down and has to go to the
emergency room.  Tr. 55.  Plaintiff explained he misses out on
spending time with his family because he spends most of his time
in his room lying down in bed due to his migraines and back pain.
Tr. 63.

    The ALJ found Plaintiff's allegations were not fully
credible because his providers recommended exercise and he
attended school during part of the relevant period, which
suggests his "pain may not have been as debilitating as alleged."
Tr. 24.  A physician's recommendation that a claimant perform
therapeutic exercises, however, is not evidence that the claimant
is able to perform or to sustain such activity in a work setting.
*See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).
Moreover, the fact that Plaintiff could attend classes for four

hours per day in 2013 is not inconsistent with his 2015 testimony that he is not able to sustain work activities for more than two hours per day because such a decline is supported by the contemporaneous assessments by Dr. Mears. *Compare* Tr. 844 (Dr. Mears's 2013 opinion that Plaintiff was capable of four hours of sedentary work per day) *with* Tr. 1393 (Dr. Mears's 2015 opinion that Plaintiff was capable of two hours of sedentary work per day).

In support of the ALJ's findings the Commissioner relies on Plaintiff's statements that purportedly indicate he can drive, shop in stores, and use a computer. Plaintiff testified, however, that he can only drive short distances on an infrequent basis and that computer screens make his migraines worse. Tr. 61, 849.

A claimant's activities of daily living can be used to discredit a claimant in two ways: Either the activities can contradict the claimant's other testimony or the activities can meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Id.* at 639 (quoting *Fair*, 885 F.2d at 603). Because the Commissioner failed to identify how

Plaintiff's ability to perform any of the activities in question contradicted Plaintiff's testimony, the only issue remaining for the Court to determine is whether Plaintiff's activities meet the threshold for transferable work skills. *See id.* Even if driving, shopping, and using a computer could be considered skills "transferable to a work setting," the record does not reflect Plaintiff spends a "substantial part of his day engaged" in such activities. In fact, the record reflects Plaintiff spends very little time engaged in these activities. Tr. 61 (Plaintiff cannot tolerate using a computer because it makes his migraines worse); Tr. 291 (when Plaintiff goes shopping with his wife, he stays in the car because he cannot go in and walk around); Tr. 849 (Plaintiff drives infrequently). Accordingly, Plaintiff's daily activities do not constitute a clear and convincing reason for the ALJ to reject Plaintiff's subjective symptom testimony.

The ALJ also noted a purported lack of objective evidence in the medical record to support Plaintiff's alleged symptoms on the ground that imaging of Plaintiff's back showed no more than mild findings and imaging of his brain was unremarkable. Tr. 23–24. The ALJ also found the results of neurological examinations were unremarkable. Tr. 24. Imaging evidence, surgery, and neurological findings, however, are not required to establish the existence of fibromyalgia under SSR 12-2p. In fact, the Ninth

Circuit has made clear that diagnosing fibromyalgia "does not rely on X-rays or MRIs." *See Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017). Fibromyalgia "is diagnosed entirely on the basis of patients reports of pain and other symptoms," and there "are no laboratory tests to confirm the diagnosis." *Id.* at 663 (citing *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)(quotations omitted)). When evaluating whether a claimant's RFC renders him disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods as described in SSR 12-2p and *Benecke*. *Id*. at 662.

Under SSR 12-2p there are a number of symptoms that are considered to be clinical "signs" of fibromyalgia including muscle pain, fatigue or tiredness, muscle weakness, headache, numbness or tingling, dizziness, insomnia, depression, nausea, vomiting, or nervousness. Here the record is replete with clinical signs of Plaintiff's fibromyalgia (Tr. 74, 287, 408, 431, 439, 468, 472, 484, 489, 491, 506, 512–14, 537, 558, 632, 642, 657, 667, 675–76, 684, 700, 738, 782–83, 811, 826, 847, 1050–51, 1313, 1319, 1360, 1364, 1376). The SSA bases its evaluation of fibromyalgia on the American College of Rheumatology criteria (*see* SSR 12-2p, at *2), and Dr. Stacey found Plaintiff met the American College of Rheumatology criteria for fibromyalgia. Tr. 484.

The ALJ also found Plaintiff's leg-raise tests were negative for radicular pain, that he does not have any sensory deficits, and that he has a normal gait. Tr. 24. None of these findings, however, are inconsistent with fibromyalgia. *See* SSR 12-2p.

Here the ALJ failed to evaluate Plaintiff's fibromyalgia as required under SSR 12-2p or the American College of Rheumatology standards. The Commissioner, however, contends the ALJ accounted for Plaintiff's fibromyalgia in his evaluation of Plaintiff's RFC when the ALJ limited Plaintiff to unskilled work due to his depression and pain. The Commissioner further argues Plaintiff did not identify any evidence that compelled a finding that he had limitations beyond those in the ALJ's assessment of Plaintiff's RFC. The record reflects, however, that Dr. Anderson concluded Plaintiff would only be able to perform a maximum of two hours of sedentary work in a normal workday due to his fibromyalgia and other impairments. Tr. 855.

The Commissioner contends the opinions of the nonexamining physicians that Plaintiff can work contradict Plaintiff's claims that he cannot work. Def.'s Br. at 16-17. The Commissioner also asserts the "objective evidence does not establish that [Plaintiff's] impairments prevent him from *all* work." Def.'s Br. at 15. The Commissioner's assertion is not a sufficiently specific basis for rejecting Plaintiff's symptom testimony. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)(The ALJ must

16 – OPINION AND ORDER

"state which . . . testimony is not credible and what evidence suggests the complaints are not credible.").  Moreover, Plaintiff did not testify he was incapable of all work.  Tr. 58.

In addition, the ALJ relied on a theory of conservative treatment to discount Plaintiff's testimony based on the ALJ's finding that Plaintiff was not compliant with his stretching regimen.  Tr. 24.  The Commissioner argues it is reasonable for an ALJ to "make an adverse credibility finding where the claimant failed to comply with treatment and there is *no evidence* suggesting such failure was caused by the claimant's impairments."  Def.'s Br. at 16 (citing *Molina*, 674 F.3d at 1114)(emphasis added).  Here, however, there was direct evidence that Plaintiff's failure to comply with the stretching routine was caused by his impairments; for example, Dr. Mears opined Plaintiff would be unable to perform his stretching routine, and the record reflects exercise made Plaintiff's pain worse. Tr. 499, 640.

The ALJ also relied on the fact that Plaintiff "was told he was not a good candidate for injections or surgery until his condition deteriorated further."  Tr. 26.  This discussion, however, occurred in the context of Plaintiff's lumbago and tethered spinal cord, and, in any event, the record does not indicate that injections or surgery would be appropriate remedies for migraines and/or fibromyalgia.  The ALJ also noted in July

2015 Plaintiff was managing his migraines at home with "ice, cool showers, quiet rooms, and pain medicine." Tr. 27. The fact that there was a one-month period during which Plaintiff was able to manage his migraines at home, however, is not sufficient evidence to reject Plaintiff's symptom testimony. The ALJ may not merely cherry-pick isolated inconsistencies with the objective medical record to discount a plaintiff's entire symptom testimony. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)(citing *Holohan v. Massanari*, 246 F. 3d 1195, 1205 (9th Cir. 2001)) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Moreover, despite managing his migraines at home for most of July 2015, Plaintiff went to the emergency room with a migraine on July 31, 2015. Tr. 1368.

The ALJ also relied on a comment that Plaintiff made in 2015 that his fibromyalgia pain was not as bad during the summer. Tr. 1330. A vague reference to improvement in Plaintiff's fibromyalgia pain during a small portion of the relevant period is insufficient to discredit Plaintiff's subjective symptom testimony because fibromyalgia must be considered on a "longitudinal record" in light of the fact that symptoms "can wax and wane." SSR 12-2p. *See also Garrison*, 759 F.3d at 1017

(citing *Holohan*, 246 F. 3d at 1205).  In fact, less than a month after making that comment, Plaintiff's pain returned to such a degree that he was unable to get out of bed for two days. Tr. 1322.

The Commissioner also argues Plaintiff ignored advice to pursue cognitive therapy and refused recommendations to reduce his narcotic use.  The record reflects, however, that Plaintiff was receiving counseling for his depression.  Tr. 57, 488, 491. Moreover, the Ninth Circuit has found it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  Treating physician Simon Weaver, M.D., observed Plaintiff "typically improves with narcotics only," and treating physician Hani Darwich, M.D., noted there were not any "easy answers" for the problem of Plaintiff's increasing resistance to narcotic medications.    Tr. 687, 874. In addition, treating physician Wan-Jui Chen, M.D., noted Plaintiff had tried "almost all known prophylactic treatments and indicated that [Plaintiff's] headaches may be intractable." Tr. 25.  Dr. Darwich observed it was "undoubtedly difficult to imagine that anything other than some narcotic will abate his headache."  Tr. 1370.  Despite concerns about narcotics, Plaintiff's primary care provider continued to prescribe them because none of his providers found an effective alternative.

The ALJ also found the medical record showed Plaintiff's symptoms improved with medication. Tr. 24. Specifically, the ALJ relied on the fact that in 2011 Plaintiff reported Lyrica and Oxycontin helped his pain. Tr. 24. As noted, isolated reports of improvement are insufficient to undermine Plaintiff's subjective symptom testimony. *See Garrison*, 759 F.3d at 1017 (citing *Holohan*, 246 F. 3d at 1205). Plaintiff's purported conservative treatment, therefore, is not a sufficient basis for discounting his symptom testimony.

Finally, the ALJ discounted Plaintiff's symptom testimony based on his alleged drug-seeking behavior. The ALJ found there was "consistent evidence of likely overuse of narcotic medication." Tr. 24. The ALJ determined the "record includes persuasive evidence that [Plaintiff's] overuse of his prescribed medications actually exacerbate[d] his allegedly disabling headaches." Tr. 25. The ALJ found the record showed Plaintiff had engaged in "drug-seeking behavior." Tr. 25. The ALJ also relied on a treatment note from Dr. Mears that indicated Dilaudid helped Plaintiff the most, but Plaintiff became addicted to it. Tr. 25. Treating physician David Craig, M.D., concluded Plaintiff's headaches were worsened by his chronic use of narcotics. Tr. 26. The ALJ also identified evidence in the medical record that indicated Plaintiff had become "resistant" to the pain-relieving effects of Dilaudid. Tr. 26. Nevertheless,

as noted, Dr. Chen indicated other medications had not been effective in treating Plaintiff's migraines, and Dr. Darwich observed narcotic medications appeared to be the only viable remedy for Plaintiff. Tr. 25, 1370. Although Dilaudid became less effective over time, Dr. Mears increased Plaintiff's dosage. Tr. 676, 683, 687, 1357. The overwhelming evidence in the record, however, indicates the increasing usage of Dilaudid was not due to any drug-seeking behavior but rather to the fact that it was the only way Plaintiff could get relief from his debilitating migraines, and Dr. Mears continued to prescribe Dilaudid due to a lack of alternatives. Tr. 1099-1102, 1325-26. Plaintiff tried numerous pain medications and a wide variety of alternative treatments including biofeedback, relaxation exercises, and acupuncture. Tr. 53, 411, 640. Plaintiff also looked into a new type of therapy in which electrodes would be embedded into his head, but his insurance did not cover that therapy. Tr. 54. In addition, Plaintiff explored treatment options with naturopaths, neurologists, and dentists. Tr. 53. Ultimately none of the other treatment options proved to be effective.

When a claimant falsely reports or exaggerates symptoms to obtain unneeded medications, such behavior undermines the claimant's symptom testimony. On the other hand, when, as in this case, a claimant takes more of his medication than

prescribed due to desperation in seeking relief from high levels of pain, it supports his credibility.  Although some concern was expressed by Plaintiff's medical providers that Plaintiff's increasing use of narcotics could lead to rebound headaches, the record does not indicate Plaintiff was engaging in drug-seeking behaviors.  In fact, Dr. Mears, Plaintiff's treating physician, explicitly concluded Plaintiff's migraines were not the result of abusing his medications and that he was not engaged in drug-seeking behavior, Dr. Anderson "did not detect signs of symptom magnification or secondary gain," and Dr. Craig acknowledged Plaintiff's migraines were "certainly severe and troublesome" despite his concerns that narcotics may not be the best treatment option for Plaintiff.  Tr. 823, 954, 1313.

To support his conclusion that Plaintiff was drug-seeking, the ALJ cited an emergency-room visit in which the cocktail of IV medications consisting of Toradol, Zofran, and Decadron failed to relieve Plaintiff's migraine pain.  Tr. 27.  The doctor refused to provide Plaintiff with further narcotics, and Plaintiff became angry and ripped out the IV.  Tr. 27.  The ALJ, however, mischaracterized the record; *i.e.,* although Dr. Weaver acknowledged Plaintiff's migraines typically improved only with narcotics, he refused to medicate Plaintiff with narcotics. Tr. 874.  This isolated event, when viewed in the context of Plaintiff's repeated difficulty in getting relief from his

migraines, is insufficient to infer that Plaintiff was drug-seeking.

Moreover, at the hearing the ALJ actually found Plaintiff does not "abuse his medication." Tr. 46. In fact, the ALJ made a point of stating on the record that he was not making such a finding. Tr. 46 ("I do have to consider that issue, but I'm going to just say on the record that I'm not—that's not going to be my finding."). The Commissioner, however, asserts in a footnote that the ALJ's conclusion as to Plaintiff not abusing his medications was in the context of determining that the ALJ did not need to engage in a drug abuse or alcoholism (DAA) analysis. Regardless of the context, the fact that the ALJ made an unequivocal finding that Plaintiff did not abuse his medications certainly undermines the ALJ's later conclusion that Plaintiff was drug-seeking.

In addition, the record does not reflect Plaintiff exaggerated his symptoms. To the contrary, it is evident that the increased dosage of Dilaudid was due to the unfortunate confluence of circumstances consisting of his unbearable migraine pain, the gradual decrease in Dilaudid's effectiveness, and the lack of a viable alternative treatment.

On this record the Court concludes the ALJ erred when he improperly discounted Plaintiff's subjective symptom testimony without providing legally sufficient reasons for doing so.

**II.  The ALJ erroneously rejected the medical opinions of Dr.
Mears, Plaintiff's treating physician, and Dr. Anderson,
Plaintiff's examining physician, and improperly credited the
opinion of Dr. Berner, Plaintiff's nonexamining physician.**

Plaintiff alleges the ALJ erred when he gave little weight
to the opinions of Drs. Mears and Anderson and credited the
opinion of Dr. Berner's opinion over those of Drs. Mears and
Anderson.

**A.  Standards**

An ALJ may reject an examining or treating physician's
opinion when it is inconsistent with the opinions of other
treating or examining physicians if the ALJ makes findings
setting forth specific, legitimate reasons for doing so that are
based on substantial evidence in the record.  *Taylor*, 659 F.3d at
1232.  When the medical opinion of an examining or treating
physician is uncontroverted, however, the ALJ must give "clear
and convincing reasons" for rejecting it.  *Turner v. Comm'r of
Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010)(quoting *Lester*, 81
F.3d at 830-31).

A nonexamining physician is one who neither examines nor
treats the claimant.  *Lester*, 81 F.3d at 830.  *See also Garrison*,
759 F.3d at 1012.  "The opinion of a nonexamining physician
cannot by itself constitute substantial evidence that justifies
the rejection of the opinion of either an examining physician or

a treating physician." *Taylor*, 659 F.3d at 1234 (quoting *Lester*, 81 F.3d at 831). When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so with specific and legitimate reasons supported by substantial evidence. *See, e.g., Ryan*, 528 F.3d at 1198.

**B.    Opinion of Dr. Mears, Plaintiff's Treating Physician**

Dr. Mears was Plaintiff's treating physician for over 11 years. Tr. 59. During the period from March 20, 2010, through December 10, 2015, she saw him over fifty times. At multiple appointments Dr. Mears observed Plaintiff lying on the floor in the fetal position due to the overwhelming pain of his migraines. Tr. 628, 632. Dr. Mears diagnosed Plaintiff with fibromyalgia and migraines. Tr. 640. In June 2013 Dr. Mears opined Plaintiff was capable of performing four hours of sedentary work in an eight-hour workday. Tr. 844. In January 2015 as Plaintiff's ailments progressed, Dr. Mears determined Plaintiff was capable of performing only two hours of sedentary work in an eight-hour workday. Tr. 1393.

The ALJ gave Dr. Mears's opinion little weight on the ground that it was "based largely on [Plaintiff's] subjective complaints." Tr. 28. The ALJ relied on a March 2015 treatment note in which Plaintiff commented he could complete only two

hours of sedentary work per day. Tr. 28. The Commissioner argues Dr. Mears's form could have been influenced by Plaintiff's statement because the January form was resubmitted in March. Nevertheless, the form was filled out, signed, dated, and submitted on January 19, 2015. Tr. 1393. The fact that the form was resubmitted in March with the same functional limitations is irrelevant because Dr. Mears reached her medical conclusions before Plaintiff made his comment. Thus, the ALJ's inference that Dr. Mears's January 2015 opinion was based on Plaintiff's March 2015 statement is unreasonable on its face.

The ALJ also found Dr. Mears's opinion was not supported by the medical record. To support his finding, the ALJ cited the mild imaging of Plaintiff's back, unremarkable imaging of Plaintiff's brain, and unremarkable neurological examinations. Tr. 28. The mild imaging is not an adequate reason for rejecting Dr. Mears's opinion, however, because Dr. Mears's opinion was based on diagnoses of migraines and fibromyalgia, which are not measurable through imaging. *See* SSR 12-2p. *See also Revels*, 874 F.3d at 657; *Needham v. Comm'r Soc. Sec.*, No. 3:16-cv-1380-YY, 2017 WL 4052184, at *10 (D. Or. Aug. 8, 2017)(citing *Mehrnoosh v. Astrue*, No. cv-10-52-HZ, 2011 WL 2173809, at *7 (D. Or. Jun. 2, 2011))("[M]igraines are not susceptible to detection and quantification by laboratory testing and/or medical imaging.").

The ALJ also found Plaintiff's treatment was routine and conservative because he never had surgery on his back. Tr. 29. As noted, however, there is nothing in the record to suggest that surgery is an appropriate course of treatment for fibromyalgia or migraines. The ALJ also found Dr. Mears's opinion was inconsistent with "some medical evidence" showing "some symptomatic improvement with medication." Tr. 29. The ALJ, however, did not explain which medical evidence showed improvement with which symptoms or to what degree the symptoms improved, which is not a sufficiently specific reason for rejecting Dr. Mears' opinion. *See Revels*, 874 F.3d at 654. *See also Lester*, 81 F.3d at 830-31.

The ALJ also found Dr. Mears's opinion was not consistent with her own recommendation that Plaintiff increase his exercise. Tr. 29. As noted, a physician's recommendation that a claimant perform therapeutic exercises is not evidence that the claimant is capable of full-time employment. *Vertigan*, 260 F.3d at 1050.

The ALJ also found Dr. Mears's opinion was inconsistent with Plaintiff's ability to go to class and his noncompliance with a stretching regimen. Tr. 29. In 2013 Plaintiff began taking classes at Portland Community College, but he only completed two terms because he was experiencing memory problems, was "very stressed," and sitting in class exacerbated his back

pain.  Tr. 90-91, 664-65, 847.  Moreover, he only spent four
hours per day in class, which was consistent with Dr. Mears's
contemporaneous opinion from June 2013 in which he indicated
Plaintiff was only capable of four hours of sedentary work per
day.  Tr. 844.  Ultimately Dr. Mears advised Plaintiff to
discontinue the classes.  Tr. 847.

Moreover, the fact that Plaintiff was noncompliant with
his stretching routine is also consistent with Dr. Mears's
opinion that Plaintiff would be unable to perform the stretching
exercises as well as other evidence that exercise worsened
Plaintiff's pain.  Tr. 499, 640.

On this record the Court concludes the ALJ erred when
he failed to provide legally sufficient reasons supported by
substantial evidence in the record for rejecting Dr. Mears's
opinion.

## C.   Opinion of Dr. Anderson, Plaintiff's Examining Physician

On November 23, 2013, Dr. Anderson examined Plaintiff
and also reviewed Plaintiff's medical records.  Tr. 857, 861-63.
Dr. Anderson observed Plaintiff appeared uncomfortable during the
examination, rubbed his arms frequently, moved his feet
frequently, and changed positions from sitting to standing
frequently.  Tr. 849.  He noted the medical records reflected
Dr. Stacy had previously determined Plaintiff met the American

College of Rheumatology criteria for fibromyalgia. Tr. 851.
Dr. Anderson opined Plaintiff would be incapacitated during his
severe migraine episodes. Tr. 854. He also concluded Plaintiff
was unable to maintain employment in any occupation as he was
only capable of a maximum two hours of sedentary work per day
due to his migraine headaches, chronic pain syndrome,
fibromyalgia, and chronic back pain. Tr. 855.

The ALJ gave Dr. Anderson's opinion little weight in
part because Dr. Anderson only examined Plaintiff once. Tr. 28.
The fact that Dr. Anderson performed a one-time examination,
however, is not in and of itself a sufficient reason to reject
Dr. Anderson's opinion. It is particularly unreasonable in this
case for the ALJ to reject Dr. Anderson's opinion on that basis
because the ALJ gave "great weight" to the opinion of Dr. Berner,
a nonexamining physician, on the ground that he "had the benefit
of reviewing medical records from several treating sources" even
though Dr. Anderson reviewed more records from Plaintiff's
treating sources and Dr. Berner never examined Plaintiff.
Moreover, Dr. Anderson performed his review of Plaintiff's
records nearly one year after Dr. Berner, which gave Anderson a
more comprehensive review of Plaintiff's longitudinal record.

The Commissioner, nevertheless, argues the regulations
allow an ALJ to give less weight to an examining opinion than an
opinion based on more continuous treatment. Here, as noted

however, the ALJ gave Dr. Anderson's opinion less weight than Dr. Berner's despite the fact that Dr. Berner's opinion was not based on more continuous treatment nor on any treatment or examination.

The Commissioner also argues Dr. Anderson's opinion was contradicted by the opinions of Drs. Berner and Arnold. Nevertheless, the nonexamining opinions alone are insufficient to reject Dr. Anderson's examining opinion because "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831.

The ALJ also found Dr. Anderson's opinion was not supported by the medical record and cited the mild imaging of Plaintiff's back, unremarkable imaging of Plaintiff's brain, and unremarkable neurological examinations. Tr. 28. As noted, migraines and fibromyalgia are not measureable through imaging. Accordingly, the ALJ erred when he based his opinion on the lack of imaging. *See Benecke*, 379 F.3d at 594 (ALJ erred by "effectively requiring objective evidence for a disease that eludes such measurement.")(citation and bracketing omitted).

The ALJ also found Plaintiff's treatment was routine and conservative because he never had surgery. Tr. 28. Plaintiff's severe migraines, however, necessitated dozens of

trips to the emergency room where his treatment generally consisted of a combination of several intravenous medications. Even at home he was heavily medicated with narcotics and a bevy of additional medications for his migraines, depression, and fibromyalgia, including Triazalom, Trazadone, Baclofen, Escitalopram, Promethazine, and Methylprednisolone. Tr. 1099-1104. Thus, Plaintiff's treatment was far from routine.

As noted, the ALJ also found Dr. Anderson's opinion was inconsistent with "some medical evidence" showing "some symptomatic improvement with medication." Tr. 28. This rationale, however, is not a proper basis for rejecting a doctor's opinion because it is not sufficiently specific.

The ALJ also found Dr. Anderson's opinion was inconsistent with Plaintiff's overuse of narcotic medications. Tr. 28. As noted, the ALJ expressly found during the hearing that Plaintiff does not "abuse his medication." Tr. 46. Moreover, Dr. Mears specifically noted Plaintiff was not "exaggerating his pain symptoms in order to obtain medications." Tr. 1313. Drs. Berner and Arnold also indicated there was not any evidence of substance abuse. Tr. 120, 133.

The ALJ also found Dr. Anderson's opinion was inconsistent with Plaintiff's ability to go to class. Tr. 28. The Commissioner concedes Plaintiff had to quit going to school, but the Commissioner alleges Plaintiff quit for "reasons

unrelated to his physical impairments." Def.'s Br. at 11. The
Commissioner, however, does not identify any of those purported
reasons, and the record reflects Plaintiff quit going to school
because of mental, emotional, and physical impediments including
back pain caused by sitting in class. Tr. 90-91, 664-65, 847.

The Commissioner also argues Plaintiff ignored
recommendations to curtail his narcotic use. Even though there
were suggestions that Plaintiff reduce his narcotic use,
Dr. Mears continued to prescribe Dilaudid because a viable
alternative for Plaintiff was never discovered.

In addition, the Commissioner argues Dr. Anderson's
opinion was based on Plaintiff's back pain rather than on his
migraines or fibromyalgia, and, therefore, Dr. Anderson's
conclusions regarding Plaintiff's migraines and fibromyalgia were
either not specific or were not clearly inconsistent with the
ALJ'S evaluation of Plaintiff's RFC. The record, however, does
not bear this out. Dr. Anderson concluded Plaintiff would be
unable to work in any occupation because he was only capable of
performing a maximum of two hours of sedentary work in a normal
workday due to his fibromyalgia, migraines, and other
impairments. Tr. 855.

On this record the Court concludes the ALJ erred when
he failed to provide legally sufficient reasons supported by
substantial evidence in the record for rejecting Dr. Anderson's

opinion.

**D.    Opinion of Dr. Berner, Plaintiff's Nonexamining Physician**

The ALJ gave "great weight" to Dr. Berner's opinion because "he had the benefit of reviewing medical records from several treating sources and had a longitudinal picture of the claimant's health."  Tr. 29.

As noted, an ALJ may "set forth specific, legitimate reasons for crediting one medical opinion over another." *Garrison*, 759 F.3d at 1012.  The ALJ credited Dr. Berner's opinion over the opinions of both Dr. Anderson and Dr. Mears even though the "longitudinal picture" that Dr. Berner reviewed extended less than two years into the relevant period and, as conceded by the ALJ, Dr. Berner did not review the medical opinions of either Dr. Mears or Dr. Anderson.  Tr. 29.  Moreover, the Court notes both Dr. Mears and Dr. Anderson reviewed Plaintiff's medical records and both had access to a greater longitudinal picture.

The ALJ also relied on the fact that Dr. Berner was "an expert and has experience in the vocational issues involved in the disability program under the Social Security Act."  Tr. 29. This is an improper basis for crediting the opinion of a nonexamining physician over the opinions of examining and

treating physicians that would result in a *per se* rule allowing an ALJ to credit a nonexamining physician over examining and treating physicians in every Social Security case and completely upend the established precedent for evaluating a physician's opinions. *See Lester*, 81 F.3d at 830 (The opinions of treating physicians and examining physicians are generally accorded greater weight than the opinions of nonexamining physicians). *See also* 20 C.F.R. §§ 404.1527(c)(1), 404.1527(c)(2).

The ALJ also found Dr. Berner's opinion was consistent with the mild imaging, Plaintiff's conservative treatment, the medical evidence showing "some improvement," Dr. Mears's recommendation that Plaintiff increase his exercise, and Plaintiff's ability to go to school. Tr. 29. As noted, the mild imaging was not inconsistent with migraines and fibromyalgia and, therefore, was not a proper basis for crediting Dr. Berner over Drs. Mears and Anderson. Moreover, assertions that Plaintiff showed "some improvement" in some of his symptoms when using medication was not a valid reason for crediting Dr. Berner over of Dr. Mears and Dr. Anderson. Finally, the fact that Plaintiff, with great difficulty, could attend classes for four hours a day was consistent with Dr. Mears's determination that Plaintiff was capable of four hours of sedentary work per day, and Plaintiff's ability to sit in class for four hours a day does not support Dr. Berner's conclusion that Plaintiff could stand or walk for up to

six hours per day.

Accordingly, on this record the Court concludes the ALJ erred when he credited Dr. Berner's opinion over the opinions of Drs. Mears and Anderson because the ALJ failed to provide legally sufficient reasons supported by substantial evidence in the record for doing so.

## III. The ALJ improperly rejected Sheryll Bair's lay-witness testimony.

Plaintiff asserts the ALJ erred when he gave little weight to the lay-witness testimony of Sheryll Bair, Plaintiff's mother.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting lay-witness testimony must be "specific." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Nevertheless, an ALJ is not required to address each lay-witness statement or testimony on an "individualized, witness-by-witness-basis. If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)(quotation omitted).

Germane reasons for discrediting lay-witness testimony
include inconsistency with the medical evidence and the fact that
the testimony "generally repeat[s]" the properly discredited
testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211,
1218 (9th Cir. 2005). *See also Williams v. Astrue*, 493 F. App'x
866 (9th Cir. 2012).

The ALJ gave "moderate weight" to Sheryll Bair's statements
regarding Plaintiff's daily activities, but the ALJ gave "little
weight" to Sheryll Bair's statements regarding Plaintiff's
limitations and capabilities on the ground that her testimony was
based on Plaintiff's subjective testimony that was not supported
by the medical record. Tr. 30. The ALJ, however, erred when she
rejected Sheryll Bair's testimony on the basis that her
observations of claimant's symptoms were not supported by medical
evidence such as the mild imaging. *Bruce v. Astrue*, 557 F.3d
1113, 1116 (9th Cir. 2009). As noted Plaintiff's migraines and
fibromyalgia are not measurable through imaging.

The ALJ also found "as a family member perhaps concerned
about her responsibilities to support [Plaintiff], [Sheryll Bair]
may have an underlying financial incentive in seeing the claimant
obtain federal disability benefits." Tr. 30. A close family
member, however, is not disqualified from rendering a competent
opinion of how a claimant's impairment affects his ability to
perform basic work activities. *Bruce*, 557 F.3d at 1116. *See*

*also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th
Cir. 2009)(ALJ may not reject lay-witness testimony on the basis
that the witness is an "interested party" in the "abstract").
Thus, the Court finds the ALJ erred when he rejected the lay-
witness testimony of Sheryll Bair because the ALJ did not provide
legally sufficient reasons for doing so.

The Commissioner, however, argues when a lay witness does
not describe limitations beyond those described by Plaintiff and
the ALJ properly rejected the Plaintiff's subjective symptom
testimony, any error in rejecting the lay-witness testimony would
be harmless. *Molina*, 674 F.3d at 1117. Here, however, the ALJ's
error was not harmless because, as noted, the Court has concluded
the ALJ erred when he failed to provide legally sufficient
reasons for rejecting Plaintiff's subjective symptom testimony.


## **REMAND**

The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court. *Harman v. Apfel*, 211 F.3d 172, 1178 (9th Cir. 2000). The
issue turns on the utility of further proceedings. A remand for
an award of benefits is appropriate when no useful purpose would
be served by further administrative proceedings or when the
record has been fully developed and the evidence is insufficient
to support the Commissioner's decision. *Strauss v. Comm'r*, 635

37 - OPINION AND ORDER

F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke*, 379 F.3d at

593).  The court may not award benefits punitively and must

conduct a "credit-as-true" analysis to determine whether a

claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine evidence should be

credited and an immediate award of benefits directed when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such evidence,
> (2) there are not any outstanding issues that must
> be resolved before a determination of disability
> can be made, and (3) it is clear from the record
> that the ALJ would be required to find the
> claimant disabled if such evidence were credited.

*Id.* The reviewing court should decline to credit testimony when

"outstanding issues" remain.  *Luna v. Astrue*, 623 F.3d 1032, 1035

(9th Cir. 2010).  When the court finds the elements of the

"credit-as-true" rule have been satisfied, however, the court may

only remand for further proceedings if "an evaluation of the

record as a whole creates serious doubt that the claimant is, in

fact, disabled." *Garrison*, 759 F.3d at 1021.  When "the

Commissioner fails to provide adequate reasons for rejecting the

treating physician's opinion, we credit that opinion as a matter

of law." *Lester*, 81 F.3d at 834.  *See also Reddick v. Chater*,

157 F.3d 715, 729 (9th Cir. 1998)("We do not remand this case for

further proceedings because it is clear from the administrative

record that Claimant is entitled to benefits."); *Rodriguez v.

Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)(if remand for further

38 - OPINION AND ORDER

proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

Here the Court has concluded the ALJ erred when he failed to provide legally sufficient reasons supported by substantial evidence in the record for rejecting the opinions of Drs. Mears and Anderson, Plaintiff's testimony, and the lay-witness testimony of Sheryll Bair.

To determine whether there are any outstanding issues, the court looks at whether there are "significant factual conflicts in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1104 (9th Cir. 2014). Here the Commissioner asserts the opinions of the nonexamining state-agency physicians create a significant conflict. Although Drs. Arnold and Berner both concluded Plaintiff was capable of sitting, standing, and walking for six hours in an eight-hour day, the medical record is devoid of any evidence that supports such a conclusion. Moreover, the opinions of Drs. Mears and Anderson that Plaintiff could only perform two hours of sedentary work in an eight-hour workday were consistent with Plaintiff's testimony and the lay-witness testimony. In addition, the opinions of the nonexamining doctors were based entirely on their review of the incomplete medical records that covered only a portion of the longitudinal record. Tr. 29, 115-19, 129-31. Moreover, the Court has concluded the ALJ improperly credited Dr. Berner's opinion over the opinions

of Drs. Mears and Anderson.  Accordingly, the opinions of
Drs. Arnold and Berner do not give rise to "significant factual
conflicts."  *See Treichler*, 775 F.3d at 1104.  Thus, there are
any outstanding issues.

After crediting as true the opinions of Drs. Anderson and
Mears as well as the testimony of Plaintiff and Sheryll Bair, the
ALJ would be required to find on remand that Plaintiff is
disabled because their opinions and testimony show Plaintiff
would only be able to perform two hours of sedentary work per
day.  Tr. 58, 331, 855, 1393.  As a result, Plaintiff would be
unable to perform work on a regular and continuing basis.  SSR
96-8p ("A 'regular and continuing basis' means 8 hours a day, for
5 days a week, or an equivalent work schedule.").

When each of the credit-as-true factors is satisfied, only
in "rare instances" does the record as a whole leave "serious
doubt as to whether the claimant is actually disabled."  *Revels*,
874 F.3d at 668 n.8 (citing *Garrison*, 759 F.3d at 1021).  The
Court does not find this case to be one of those "rare
instances."  Thus, "it is clear from the administrative record
that [Plaintiff] is entitled to benefits," and, therefore, no
useful purpose would be served by further administrative
proceedings.  *See Reddick*, 157 F.3d at 729.

Because the Court's conclusions are dispositive of this
matter, the Court "decline[s] to reach [Plaintiff's] alternative

ground[s] for remand." *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012).

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this 8th day of May, 2018.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge